UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80884-RUIZ/MAYNARD

**PEIXUAN WANG, et al.,**

    **Plaintiffs,**

v.

**REVERE CAPITAL MANAGEMENT, LLC,**
a Connecticut Limited Liability Company, **et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [DE 33]

**THIS CAUSE** comes before me upon an Order of Reference (DE 44) and the above Motion. Having reviewed the entire record, the Motion and its related briefing, and the applicable case law, I respectfully recommend that the Motion be granted.

## BACKGROUND

Plaintiffs, Peixuan Wang, Hezhang Chen, Donglin Gu, Jialin Han, Wen Shen, Yi Gao, Yongliang Huang, Jing Wu, Tianjun Li,[1] and Royal Palm Town Center IV, LLLP (collectively, "Plaintiffs"), initiated this action on June 14, 2022 (DE 1) and filed a First Amended Complaint (DE 22) on July 28, 2022.[2] The First Amended Complaint asserts claims against defendants, Revere Capital Management, LLC, Revere Capital, LLC, and Revere Capital Management, LP (collectively, "Defendants"), for aiding and abetting fraud (Count I), money had and received

---

[1] I will refer to the individual-capacity Plaintiffs as the "Individual Plaintiffs."

[2] In response to Defendants' Motion to Dismiss (DE 20), Plaintiffs amended their initial pleading as a matter of course on July 28, 2022.

1

(Count II), unjust enrichment (Count III), equitable lien (Count IV), and equitable tolling (Count V).

According to the First Amended Complaint,[3] the Individual Plaintiffs are Chinese citizens residing in various states across the United States. DE 25, ¶¶ 37-45. In an effort to obtain permanent legal residency in the United States under the U.S. Citizen and Immigration Services ("USCIS") EB-5 program, the Individual Plaintiffs each invested $500,000, plus administrative and legal fees, in the Royal Palm Town Center IV, LLLP (the "Partnership").[4] *Id.* ¶ 46. A total of 52 investors ultimately invested funds into the Partnership. *Id.*

The Individual Plaintiffs and the other Partnership investors authorized the Partnership to loan the funds to non-party Royal Palm Development I, LLC ("RPD"), so that RPD could acquire, renovate, and ultimately lease sixty condominium units in West Palm Beach, Florida (the "Property"). *Id.* ¶¶ 5, 63. Non-party Joseph J. Walsh ("Walsh") was the president and sole owner of RPD. *Id.* ¶ 76. In exchange for this loan to RPD, the Partnership and its investors were to receive a return on their investment and a first-priority mortgage interest in the Property. *Id.* ¶¶ 63, 78; DE 25-1, p. 44.

In a May 2011 Comprehensive Business Plan for EB-5 Investment, Walsh, on behalf of RPD, assured Plaintiffs that the Partnership's loan to RPD and ultimate acquisition and renovation of the Property would create the requisite number of jobs under the EB-5 program. DE 25, ¶ 78;

---

[3] The following facts are accepted as true solely for purposes of analyzing Defendants' Motion to Dismiss.

[4] The First Amended Complaint describes the USCIS EB-5 program—as it existed during the relevant time-period—as a program under which a foreign national can obtain "conditional permanent residence status [in the United States] for a period of two years" by investing $500,000 or $1,000,000 in a venture that creates at least ten full-time jobs in the United States. DE 25, ¶¶ 59-60.

DE 25-1, pp. 29-50.  Plaintiffs were also promised that the Partnership funds lent to RPD would be held in escrow until the earlier of (1) the USCIS' approval of the investors' initial petition under the EB-5 program or (2) "receipt of 100% of the offering."[5]  DE 25, ¶ 6.  Contrary to these representations, however, Plaintiffs' funds were not used for the intended purpose and were stolen, and Walsh and RPD "never recorded the Partnership's security interest in the Property." *Id.*  ¶¶ 6, 12, 13.

On August 30, 2013, Walsh, on behalf of RPD, obtained a $3.3 million loan from Revere High Yield Fund, LP ("High Yield"), an "investment vehicle" of defendant Revere Capital Management, LLC.  *Id.*  ¶ 16.  Rather than using Plaintiffs' funds to acquire and renovate the Property as promised, between March 4, 2014 and July 30, 2015, Walsh used $1,612,798.91 of Plaintiffs' funds to repay the High Yield loan.  *Id.* ¶¶ 27, 73.  Plaintiffs' funds were never returned, and the Individual Plaintiffs' EB-5 visa applications were denied because the Project failed to materialize and create the requisite number of jobs.  *Id.*  ¶ 13.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted.  When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).  However, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[5] The First Amended Complaint does not specify whether Walsh made these representations.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense.  *Id.*; *see also Speaker v. U.S. Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A plaintiff is not required to detail all the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests.  *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  The allegations must, however, be enough to raise a right to relief above the speculative level.  *Id*.  The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Iqbal*, 556 U.S. at 662.  "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'"  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted).  "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## ANALYSIS

**A.     The First Amended Complaint is a Shotgun Pleading**

As a preliminary matter, the First Amended Complaint should be dismissed as a shotgun pleading.  It is well settled that shotgun pleadings "are altogether unacceptable . . . [and] exact an intolerable toll on the trial court's docket."  *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir.

4

1997). While shotgun pleadings can take several forms, the most common type of shotgun pleading is a "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).

Here, the First Amended Complaint spans 23 pages and contains five counts, with each count incorporating the allegations of the preceding count, such that Count V is an adoption of the entire First Amended Complaint. *See id.* Although the First Amended Complaint generally provides notice of the claims asserted against Defendants, the Eleventh Circuit has made clear that this impermissible pleading format renders it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Accordingly, I recommend that the First Amended Complaint be dismissed without prejudice as a shotgun pleading. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."). Although the First Amended Complaint should be dismissed in its entirety on shotgun pleading grounds, I will nonetheless address the merits of Plaintiffs' claims below.

**B.     Aiding and Abetting Fraud (Count I)**

Count I is a state law aiding and abetting fraud claim and asserts that Defendants assisted Walsh and RPD in perpetuating the alleged fraud against Plaintiffs. Defendants contend that Count

I should be dismissed because (1) the aiding and abetting claim is time-barred; and (2) Plaintiffs failed to state a legally sufficient cause of action. I will address each argument in turn below.

### 1) Statute of Limitations

"A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *Roberts v. Carnival Corp.*, 824 F. App'x 825, 827 (11th Cir. 2020) (citation and quotation omitted). Thus, "dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (citation and quotation omitted).

Under Florida law,[6] claims for aiding and abetting fraud are subject to a four-year statute of limitations. *See* Fla. Stat. § 95.11 (3)(j). This four-year limitations period begins to run when the cause of action accrues. *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000). As a general matter, a cause of action accrues, and the limitations period thus begins to run, when "the last element constituting the cause of action occurs." *Id.* at 1184–85 (citation and quotation omitted). Under Florida's "delayed discovery" doctrine, however, "claims for fraud and aiding and abetting fraud accrue[] when [a plaintiff] knew or should have known that they suffered damages." *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 781 (11th Cir. 2015) (citations omitted); *see also* Fla. Stat. § 95.031(2)(a).

Defendants argue that Count I is time-barred because (1) the Individual Plaintiffs made their last transfer to the Partnership in November of 2012; (2) the Comprehensive Business Plan for EB-5 Investment provided that the Project would be completed and provide a return on

---

[6] Florida law provides the statute of limitations in this diversity action because "[i]n actions based on diversity jurisdiction, federal courts apply the state's relevant statute of limitations." *Falcon v. Bank of Am., N.A.*, No. 1:21-CV-24250, 2022 WL 6745443, at *2 (S.D. Fla. Aug. 19, 2022).

investment within two years of the last transfer date; and (3) Plaintiffs should have discovered the underlying fraud by November of 2014 when they realized that their "investments were not bearing fruit" as promised. DE 33, ¶ 16.

While Count I may ultimately be time-barred for the reasons identified by Defendants, Count I's untimeliness is not apparent from the face of the First Amended Complaint. Indeed, "the arguments made by the parties demonstrate that the delayed discovery issue is inextricably woven into factual questions surrounding the transaction at issue here," and such issues of fact cannot be resolved on a motion to dismiss. *Razor Cap., LLC v. CMAX Fin. LLC*, No. 17-80388-CIV, 2017 WL 3481761, at *5 (S.D. Fla. Aug. 14, 2017). For instance, the First Amended Complaint does not allege when Plaintiffs discovered that their funds were no longer held in escrow as promised or whether Walsh made any representations regarding the return-on-investment timeline initially outlined in the Comprehensive Business Plan for EB-5 Investment. Moreover, the First Amended Complaint alleges that Plaintiffs did not discover Defendants' alleged role in the misappropriation of their funds until September of 2020, when their forensic accounting expert concluded that Plaintiffs' funds were used to repay the High Yield loan. *See* DE 25, ¶¶ 71-74.

Because Count I's untimeliness is not apparent from the face of the First Amended Complaint, Count I should not be dismissed on statute of limitations grounds.

**2) Legal Sufficiency**

As to the merits of Count I, Defendants assert that Plaintiffs have failed to state a legally cognizable cause of action. To state a claim for aiding and abetting fraud under Florida law, a plaintiff must plausibly allege that (1) "[t]here existed an underlying fraud"; (2) "[t]he defendant had knowledge of the fraud"; and (3) "[t]he defendant provided substantial assistance to advance

7

the commission of the fraud." *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Maryland*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005) (citations omitted). I will address each element below.

### a. The Existence of an Underlying Fraud

To satisfy the underlying fraud element, a plaintiff must demonstrate that (1) the party committing fraud "made a misrepresentation of a material fact"; (2) the party committing fraud "knew or should have known the falsity of the statement"; (3) the party committing fraud "intended to induce the aggrieved party to rely on the false statement and act on it"; and (4) "the aggrieved party relied on that statement to [their] detriment." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 595 n.2 (Fla. 2013). A plaintiff must make such a showing "with particularity as required by Rule 9." *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, No. 15-CV-60653, 2015 WL 12862724, at *3 (S.D. Fla. Aug. 20, 2015). This particularity requirement is satisfied if a complaint "alleges facts as to time, place, and substance of the [] alleged fraud, specifically the details of the [] allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (citations and quotations omitted).

Defendants do not contend that Plaintiffs have entirely failed to identify an underlying fraud. Instead, Defendants assert that Plaintiffs failed to plead the existence of the underlying fraud with particularity because the First Amended Complaint does not specifically describe "the 'who, what, when, where and how' about the alleged fraud that took place." DE 33, ¶ 8. I disagree. The First Amended Complaint, through its allegations and references to exhibits, asserts in relevant part that (1) in a November 7, 2010 loan agreement signed by Walsh as the President of RPD, Walsh and RPD represented to Plaintiffs that their investment in the Project would fund the acquisition of the Property and create the requisite number of jobs under the EB-5 program (DE

25-1, pp. 3-6); (2) Walsh and RPD reiterated in a May 2011 Comprehensive Business Plan for EB-5 Investment that Plaintiffs' funds were to be used to "for the acquisition, leasing, build-out, and management of the [Property]" (DE 25-1, p. 31); and (3) Plaintiffs' funds were not used for such purpose but were instead stolen and impermissibly used to repay the High Yield loan between March 4, 2014 and July 30, 2015 (DE 25, ¶ 27).

The foregoing allegations and references to attachments sufficiently describe the alleged underlying fraud with particularity. Thus, I find that Plaintiffs have satisfied the first element of their aiding and abetting fraud claim.

### b. Knowledge of the Underlying Fraud

Defendants additionally assert that Count I should be dismissed because Plaintiffs failed to allege facts plausibly indicating that Defendants had actual knowledge of the alleged underlying fraud. I agree.

To satisfy the second element of an aiding and abetting fraud claim, a plaintiff must allege that the defendant had "actual knowledge" of the underlying fraud. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012). While this actual knowledge element "may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (citations and quotations omitted).

Here, in relevant part, Plaintiffs assert that the First Amended Complaint satisfies the actual knowledge element because their pleading alleges that as of August 30, 2013, RPD and Walsh provided Defendants with "due diligence and underwriting documents" demonstrating that (1) "the Project was an EB-5 project funded with loans made by the Partnership"; (2) Walsh filed a UCC-

9

1 Financial Statement listing RPD as a debtor and the Partnership as the secured party "pursuant to the Partnership's loan to RPD"; and (3) Walsh and RPD promised "the Partnership a first-priority lien on the [Property] in exchange for the loan the Partnership made to RPD." DE 35, pp. 9-10. Based upon this information allegedly available in the "due diligence and underwriting documents," Plaintiffs claim that Defendants therefore knew that the 2014 and 2015 High Yield loan payments would improperly be made with Plaintiffs' funds.

This speculative leap, however, is far too tenuous to give rise to a strong inference that Defendants had actual knowledge of the alleged underlying fraud. While the "due diligence and underwriting documents" demonstrate that RPD and Walsh had contracted with Plaintiffs to work on the Project, such facts do not lead to the strong inference that Defendants therefore knew RPD and Walsh intended to defraud Plaintiffs and use those funds to repay the High Yield loan. I recognize that the Mortgage Note between RPD and High Yield, attached to the First Amended Complaint as Exhibit 3, provides that RPD's payments to High Yield would be derived from "USREDA" EB-5 funds. *See* DE 25-1, p. 52. But the First Amended Complaint alleges no facts describing this "USREDA" fund in any detail, nor does the First Amended Complaint even indicate that Defendants had a familiarity with the EB-5 program and thus knew that the High Yield loan could not be repaid with such funds.

To the extent Plaintiffs assert that the actual knowledge element is satisfied because Defendants, upon reviewing the "due diligence and underwriting documents," *should* have known or discovered that the "USREDA" EB-5 payments would be derived from misappropriated funds, such a position is without merit. It is well settled that a plaintiff cannot satisfy the actual knowledge requirement by pointing to "certain red flags indicat[ing] a defendant should have known of the" underlying fraud. *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018)

(citations and quotations omitted); *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014) (finding allegations that "at most show that [defendant] should have known of [the] fraud . . . [are] insufficient to establish knowledge" (citations and quotations omitted)); *Yuanxiao Feng v. Walsh*, No. 19-24138-CIV, 2020 WL 5822420, at *8 (S.D. Fla. Sept. 14, 2020) (finding that plaintiff "failed to create a strong inference of actual knowledge" where the complaint's allegations "merely support an inference that the [] Defendants should have known of the underlying fraud" (citations and quotations omitted)).

Accordingly, I find that Plaintiffs have failed to plausibly state that Defendants had actual knowledge of the alleged underlying fraud.

### 3) Substantial Assistance

Defendants lastly assert that Count I should be dismissed because Plaintiffs have failed to plausibly allege that Defendants substantially assisted Walsh and RPD in committing the alleged underlying fraud. I agree.

To satisfy the third element of a claim for aiding and abetting fraud, a plaintiff must make a showing that the defendant "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling the [underlying fraud] to occur." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (citations and quotations omitted). Mere "conclusory allegations that [a defendant] substantially assisted or encouraged the wrongdoing . . . [are] insufficient to withstand a motion to dismiss." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018) (citations and quotations omitted).

Plaintiffs contend they have satisfied the substantial assistance element because Defendants (1) lent $3.3 million to RPD; (2) accepted a "total of $1,612,798.91 of the Plaintiffs' funds that were unlawfully procured through the implementation of the fraudulent scheme by

11

Walsh"; and (3) provided "Walsh and RPD with a shelter for the converted funds." DE 25, ¶ 91. For much the same reasons noted above in the actual knowledge analysis, these conclusory allegations are insufficient to plausibly demonstrate that Defendants *affirmatively* assisted Walsh and RPD in perpetuating the alleged fraud against Defendants.

As noted above, Plaintiffs' allegations may raise an inference that Defendants should have known or discovered that the High Yield repayments were derived from stolen EB-5 funds. For instance, in their Response, Plaintiffs contend that it is clear Defendants provided substantial assistance because (1) the Mortgage Note provides that Defendants would receive payments from EB-5 funds; and (2) Defendants knew that such use of EB-5 funds "is illegal under 8 U.S. Code § 1153." But the First Amended Complaint alleges no facts substantiating Plaintiff's conclusory position. Indeed, the First Amended Complaint contains no allegations allowing for an inference that Defendants are well-versed in the requirements of 8 U.S.C. § 1153 and thus knew the High Yield payments would be derived from improper sources.[7] Thus, while it may be plausible that Defendants' due diligence could have or should have unveiled that RPD's contemplated use of EB-5 funds was improper, that is insufficient to plausibly demonstrate that Defendants affirmatively assisted with the alleged underlying fraud. *See Honig*, 339 F. Supp. 3d at 1345 ("A

---

[7] In their Response, Plaintiffs appear to assert their position is supported by the fact that one of the Defendants have stated in "public filings with the SEC that it deals with EB-5 investments and real estate loans." DE 35, p. 11. It is not entirely clear whether this statement refers to one of the Defendants or RPD and/or Walsh. To the extent it refers to Defendants, this allegation is not set forth in the First Amended Complaint and therefore cannot be considered in analyzing the Motion to Dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and exhibits attached thereto." (citation and quotation omitted)); *Zurich Am. Ins. Co. v. Amerisure Ins. Co.*, No. 9:16-CV-81393, 2017 WL 366232, at *7 (S.D. Fla. Jan. 20, 2017) ("While the Court must accept as true all factual allegations contained in the Complaint . . . the same does not hold for new facts that a plaintiff belatedly raises in response to a motion to dismiss." (citation omitted)).

mere recitation of the elements is insufficient to state a claim, and Plaintiffs' allegations regarding Defendants' alleged substantial assistance or encouragement fail to rise above that level.").

Accordingly, for the reasons set forth above, I find that Plaintiffs have failed to plausibly state a claim for aiding and abetting fraud because Plaintiffs have failed to sufficiently allege that (1) Defendants had actual knowledge of an underlying fraud; and (2) Defendants provided substantial assistance to the underlying fraud. Because I find that amendment would not be futile, I recommend that Count I be dismissed without prejudice.

### C. Count II (Money Had and Received) and Count III (Unjust Enrichment)

Count II is a state law claim for money had and received and Count III is a state law claim for unjust enrichment.[8] Defendants argue that Counts II and III should be dismissed because they (1) are untimely; (2) are barred by an express contract; and (3) fail to allege legally sufficient causes of action. I will address each argument in turn below.

#### 1) Statute of Limitations

Under Florida law, claims for unjust enrichment and money had and received are subject to a four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(k). Unlike the claim for aiding and abetting fraud, these claims are not subject to the "delayed discovery rule," and the date on which the facts giving rise to the causes of action were discovered has no bearing on the timeliness

---

[8] Under Florida law, "'money had and received' is synonymous with unjust enrichment and restitution, and the elements for both claims are the same." *Pincus v. Am. Traffic Sols., Inc*, 986 F.3d 1305, 1318 n.13 (11th Cir. 2021); *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1269 (S.D. Fla. 2021) ("The elements for unjust enrichment and money had and received under Florida law are the same." (citations omitted)); *Stock Fraud Prevention, Inc. v. Stock News Info, LLC*, No. 11-80764-CIV, 2012 WL 664381, at *10 (S.D. Fla. Feb. 28, 2012) (explaining that "the causes of action for money had and received and unjust enrichment are in essence "different names for the same remedy" (citations omitted)). Thus, I will analyze Counts II and III together.

analysis. *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.*, No. 8:05-CV-1856, 2008 WL 818504, at *8 (M.D. Fla. Mar. 26, 2008). Thus, these claims accrue, and the limitations period begins to run, when "the benefit is conferred" upon the defendant. *Id.*

Here, the First Amended Complaint alleges that Defendants received the final High Yield payment from Walsh and RPD on July 30, 2015. *See* DE 25, ¶ 27. Thus, at the latest, Plaintiffs' unjust enrichment and money had and received claims accrued on July 30, 2015. Counts II and III are therefore untimely because Plaintiffs initiated this action on June 14, 2022, nearly eight years after the accrual date.[9] *Burton*, 2008 WL 818504, at *8.

Accordingly, I recommend that Counts II and III be dismissed with prejudice.[10] *See Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1366 (S.D. Fla. 2016) (dismissing time-barred claim with prejudice "as amendment would be futile due to the expired statute of limitations" (citations omitted)).

**2) Express Contract**

Defendants also assert that Counts II and III should be dismissed because "the loan between [the Partnership] and RPD and the mortgage note between RPD and High Yield" preclude relief under theories of unjust enrichment and money had and received. DE 33, ¶ 36. I disagree.

---

[9] Plaintiffs assert that "[t]he benefit flowing from the misappropriation of the Plaintiffs' funds continues to be conferred on Defendants *to this very day*" and the causes of action therefore "have not yet accrued for the purposes of the statutes of limitations." DE 35, p. 20 (emphasis in original). Plaintiffs, however, cite to no authority—and I am aware of none—supporting their position that the accrual date should remain indefinitely suspended under these facts. I therefore find Plaintiffs' position to be without merit.

[10] Although I recommend that Counts II and III be dismissed with prejudice, I will address Defendants' remaining arguments below.

It is well settled that claims for unjust enrichment and money had and received are "precluded by the existence of an express contract *between the parties* concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (emphasis added). But the contracts referenced by Defendants are not "between the parties." *Id.* Instead, the loan agreement is between the Partnership and RPD (DE 25-1, pp. 3-6) and the mortgage note is between RPD and High Yield (DE 25-1, pp. 52-61). Thus, given that both Plaintiffs and Defendants are not parties to either of these agreements, the mere existence of such express contracts cannot bar Counts II and III as a matter of law. *See PWS Env't Inc. v. Borghese at Hammock Bay Condo. Ass'n, Inc.*, No. 2:18CV109-FTM-PAM-CM, 2019 WL 1473125, at *4 (M.D. Fla. Jan. 17, 2019) ("Florida law precludes unjust enrichment claims when there is an express contract between the parties to the lawsuit, not when there is an express contract between different parties covering the subject matter of the dispute.").

**3) Direct Transfers**

As to the merits, Defendants assert that Counts II and III should be dismissed because Plaintiffs have failed to state legally sufficient causes of action. Specifically, Defendants contend that the First Amended Complaint fails to plausibly allege that Plaintiffs conferred a direct benefit on Defendants. I agree.

To state a claim for unjust enrichment and money had and received, a plaintiff must plausibly allege that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Francois*, 565 F. Supp. 3d at 1269 (citations and quotations omitted). As to the first element, a "Plaintiff's indirect conferral of a benefit on Defendants is insufficient to satisfy the" conferral

15

requirement. *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F.Supp.3d 1247, 1255 (N.D. Fla. Aug. 17, 2020).

Here, the First Amended Complaint does not contain any allegations indicating that Plaintiffs conferred a direct benefit on Plaintiffs. Rather, the First Amended Complaint alleges that Plaintiffs transferred funds to RPD and Walsh and RPD misappropriated those funds to make payments on the High Yield loan. This indirect conferral of benefits is insufficient to satisfy the first element of a claim for unjust enrichment and money had and received. *See ServisFirst Bank, Inc.*, 479 F.Supp.3d at 1255; *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (To satisfy the first element, "the plaintiff must directly confer a benefit to the defendant."); *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) ("A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment."); *City of Miami v. Eli Lilly & Co.*, No. 21-22636-CIV, 2022 WL 198028, at *9 (S.D. Fla. Jan. 21, 2022) (dismissing unjust enrichment and money had and received claims where the plaintiff failed to "allege that it directly conferred a benefit on the [] Defendants").

Therefore, in addition to the statute of limitations reasons noted above, Counts II and III should be dismissed for failure to allege that Plaintiffs conferred a direct benefit on Defendants.

**D.     Equitable Lien (Count IV)**

In Count IV, Plaintiffs seek an equitable lien over the $1,612,798.91 that RPD and Walsh paid toward the High Yield loan debt. Defendants assert that the First Amended Complaint fails to allege sufficient facts to plausibly support the imposition of an equitable lien. I agree.

Under Florida law, equitable liens "arise 'out of general consideration of right and justice' and should only be granted where 'justice would suffer without them.'" *Fed. Trade Comm'n v. Marcus*, 848 F. App'x 388, 392 (11th Cir. 2021) (quoting *Jones v. Carpenter*, 90 Fla. 407, 106 So.

127, 129 (1925)).[11] "To be entitled to an equitable lien, there must be circumstances such as fraud or misrepresentation of material facts upon which the plaintiff specifically relied in good faith." *In re Cameron*, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006)."

For the reasons noted above, the First Amended Complaint fails to allege that Defendants had actual knowledge of or substantially assisted with RPD and Walsh's alleged fraud against Plaintiffs. Thus, as currently pled, the First Amended Complaint fails to plausibly allege that the "general consideration of right and justice" warrants the imposition of an equitable lien over the subject funds. *Marcus*, 848 F. App'x at 392. I therefore recommend that Defendants' motion be granted as to Count IV. Because I do not find that amendment would be futile, I recommend that Count IV be dismissed without prejudice.

E.     **Equitable Tolling (Count V)**

Count V is a claim for equitable tolling and asserts that the statutes of limitations relevant to the First Amended Complaint should be tolled because of Defendants' "wrongful and fraudulent actions." DE 25, ¶ 116. The doctrine of equitable tolling "was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period." *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1133 (Fla. 1988). The doctrine is generally applicable where "the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum." *Id.* at 1134 (citations omitted).

---

[11] Although not relevant here because there is no contract between Plaintiffs and Defendants, equitable liens also may arise "from a written contract that shows an intention to charge some particular property with a debt or obligation." *Dowling v. Davis*, No. 8:06 CV 562 T 27TGW, 2006 WL 2331070, at *3 (M.D. Fla. Aug. 10, 2006).

17

Defendants assert Count V should be dismissed because Plaintiffs have failed to sufficiently plead that the equitable tolling doctrine applies in this case. Count V should indeed be dismissed, but for a far simpler reason: while the doctrine may apply to the individual claims in a complaint, it is "not a cause of action in and of itself." *Piguet v. J.P. Morgan Chase Bank, N.A.*, No. CV 16-61935-CIV, 2017 WL 1655234, at *5 (S.D. Fla. May 2, 2017). Accordingly, because equitable tolling is not an independent cause of action, I recommend that Count V be dismissed with prejudice.[12]

### F. Defendants' Alter Ego Arguments

Defendants assert in their Motion to Dismiss that Plaintiffs have failed to allege the necessary elements to assert an alter ego theory claim against High Yield. Yet Defendants later concede in their Motion to Dismiss that Plaintiffs have not "state[d] any claim against High Yield." DE 33, ¶ 47. Thus, I need not address this hypothetical scenario, as Plaintiffs have not asserted any such alter ego claim against High Yield. *See Plant v. Doe*, 19 F. Supp. 2d 1316, 1321 (S.D. Fla. 1998) (Courts "may not issue advisory opinions, and they may not address contingencies or hypothetical situations.").

### RECOMMENDATION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss First Amended Complaint (DE 33) be **GRANTED** as follows:

1. The Amended Complaint should be **DISMISSED WITHOUT PREJUDICE** as a shotgun pleading.

2. Count I should be **DISMISSED WITHOUT PREJUDICE**.

---

[12] To be clear, Plaintiffs should not be precluded from asserting in an amended pleading that the equitable tolling doctrine applies. Instead, Plaintiffs should be precluded from asserting the equitable tolling doctrine as an independent cause of action.

3. Count II should be **DISMISSED WITH PREJUDICE**.

4. Count III should be **DISMISSED WITH PREJUDICE**.

5. Count IV should be **DISMISSED WITHOUT PREJUDICE**.

6. Count V should be **DISMISSED WITH PREJUDICE**.

7. Given that Plaintiffs have amended once before as a matter of course and may be able to plead greater detail to support their claims, Plaintiffs should be afforded one final opportunity to amend their complaint to address the deficiencies discussed in this Report.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Rodolfo A. Ruiz, II. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 15th day of February, 2023.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE